IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

GEORGE WILLIAMS,              )      CASE NO. 1:11-CV-2244

                                )

             Plaintiff,    )      JUDGE DONALD C. NUGENT

     v.                         )

                                  )      MAGISTRATE JUDGE

                                  )      KENNETH S. McHARGH

                                  )

COMMISSIONER OF         )      REPORT & RECOMMENDATION

SOCIAL SECURITY         )

                                  )

             Defendant,    )

      This case is before the undersigned pursuant to Local Rule 72.2(b).  The issue before the Court is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff George Williams' application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

      For the reasons set forth below, the undersigned recommends the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION & PROCEDRUAL HISTORY

      On August 23, 2007, Plaintiff George Williams ("Plaintiff" or "Williams") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 123).  Plaintiff alleged he became disabled on April 26, 2007, due to suffering from major depression.  (Tr. 127).  Williams' Disability Insurance benefits expired on December 31, 2011.  (Tr. 123).  The Social Security Administration denied Plaintiff's applications initially and on reconsideration.  (Tr. 71-74).  Thereafter, Williams requested a

hearing to contest the denial of his applications for benefits.  (Tr. 98-99).  The Social Security Administration granted Plaintiff's request and scheduled a hearing before an administrative law judge.

On December 15, 2010, Administrative Law Judge Dennis LeBlanc (the "ALJ") convened a hearing to evaluate Plaintiff's applications.  (Tr. 24-70).  Williams appeared with counsel and testified before the ALJ.  (*Id.*).  Vocational expert, Gene Burkhammer, also appeared and testified at the hearing.  (*Id.*).  On June 8, 2011, the ALJ issued a decision denying Plaintiff's applications.   (Tr. 5-19).  Following this ruling, Williams sought review of the ALJ's decision from the Appeals Council.  (Tr. 4).  However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL & MEDICAL EVIDENCE[1]

Williams, born on May 9, 1956, was 51 years old on his alleged onset date.[2]  (Tr. 31, 17). Accordingly, he was considered as a "person closely approaching advanced age" for Social Security purposes.  *See* 20 C.F.R. § 404.1563(d).  However, when Plaintiff turned 55 years old on May 9, 2011, he changed age categories and the Social Security Administration now considered him as a "person of advanced age".  *See* 20 C.F.R. § 404.1563(e).  Williams attained his high school diploma and has past relevant experience working as an intake specialist and gas station cashier.  (Tr. 31, 53).

---

[1] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all the medical evidence of record.  Additionally, because Parts 404 and 416 of the Code of Federal Regulations are parallel, the undersigned will only cite to Part 404.

[2] The ALJ incorrectly stated Plaintiff was 50 years old on his alleged onset date.  *See* (Tr. 17).

2

On April 26, 2007, Williams was admitted to the High Intensity Psychiatric unit of the Veterans Affairs Medical Center ("VAMC") after complaining of being confused and experiencing numerous thoughts.  (Tr. 669).  Upon admittance, doctors diagnosed Williams with "adjustment disorder with depressed and anxious mood".  (*Id*.).  Doctors also noted Plaintiff had previously experienced psychotic symptoms and schizophrenia in 1974 and 1975, although these conditions had not returned since that time.  (*Id*.).  During Plaintiff's stay in the High Intensity Psychiatric unit, he received therapy and medication to help control his depression, and doctors noted improvement in Plaintiff's mood and energy.  (Tr. 669-70).  On May 8, 2007, Plaintiff was discharged from the High Intensity Psychiatric unit of the VAMC to its Psychosocial Residential Rehabilitation Treatment Program (PRRTP) for "further stabilization and education in order to help [him] transition to discharge and [] cope with stressors."  (Tr. 670).  At the time of discharge, Williams was diagnosed with severe, recurrent major depressive disorder without psychotic features, chest pain, and a GAF score of 65.  (Tr. 669).

Williams remained in the PRRTP from May 8, 2007 until July 23, 2007.  (Tr. 662).  After treatment, Plaintiff reported improvement in his mood, sleep patterns and overall outlook.  (*Id*.).  Shortly after his discharge, Sybille Marqua, a psychiatrist, indicated Williams was competent and employable, and suffered no restrictions on his physical abilities.  (Tr. 664).  At the time of discharge, Plaintiff's GAF score was 55.  (Tr. 662).  After leaving the PRRTP program, Plaintiff was immediately transferred to the VAMC's domiciliary (the "Dom") for assistance with housing and vocational problems because Plaintiff was homeless.  (Tr. 663, 1357).  Williams continued to receive therapy and treatment while residing at the Dom.  (Tr. 672-756).  It appears, sometime on or around October 16, 2007, Plaintiff was transitioned out of the Dom and moved into transitional housing for veterans.  (*See* Tr. 1252-70).  While living in transitional housing

3

Plaintiff participated in occupational therapy through the VA and retained a job.  (Tr. 36-37).
Williams' job tasked him with replacing light bulbs throughout different offices.  (Tr. 37).
Plaintiff eventually left the transitional housing program and moved in with his sister, where he
resided at the time of the hearing.

On November 2, 2007, Kristin Haskins, Psy.D., a state agency reviewer, examined
Plaintiff's medical record on behalf of the Social Security Administration to assess Plaintiff's
mental impairments.  (Tr. 1189-1205).  Dr. Haskins diagnosed Williams with major depressive
disorder, severe and recurrent, without psychotic features, and personality disorder, not
otherwise specified. (Tr. 1192, 1196).  She opined Williams suffered from a mild limitation in
performing daily living activities and maintaining social functioning; a moderate limitation in
maintaining concentration, persistence and pace; and that Plaintiff had not suffered from any
episodes of decompensation for an extended duration.  (Tr. 1199).

Dr. Haskins also assessed Plaintiff's residual functional capacity ("RFC") to work.  (Tr.
1205).  After reviewing the medical record, she noted Williams was currently living in the Dom
due to being homeless.  (*Id.*).  The doctor also incorrectly stated that Plaintiff had never been
hospitalized due to depression.  (*Id.*).  Based on her evaluation of the evidence, Dr. Haskins
concluded Williams retained the RFC to perform simple, routine tasks in a static environment.
(*Id.*).

On March 10, 2008, Plaintiff presented to the emergency room complaining of pain in his
right leg after suffering a fall the previous day.  (Tr. 1518-19).  During examination of his knee,
doctors observed old surgical scars over Plaintiff's patella, presumably from arthroscopic surgery
Plaintiff underwent in 1999.  (Tr. 255, 1517).  Ultimately, x-rays revealed degenerative changes
of Plaintiff's patellofemoral joint and chondrocalcinosis; Plaintiff was also diagnosed with a

right hamstring strain.  (Tr. 1517-18).  Williams was advised to refrain from working for two days.  (Tr. 1518).  Approximately one week later, Williams returned to the emergency department complaining of right leg and thigh pain.  (Tr. 1509).  Doctors prescribed Williams pain medication and advised him to follow up with this primary physician at his next appointment. (Tr. 1510).

On September 3, 2009, Plaintiff's treating psychiatrist, Dr. Richard Mason, completed a Mental Impairment Questionnaire on Plaintiff's behalf.  (Tr. 1683-88).  Dr. Mason diagnosed Williams with depression (not otherwise specified), dependent personality traits, sleep apnea, hypertension and diabetes mellitus.  (Tr. 1683).  Dr. Mason also rated Plaintiff's GAF score as 60.  (*Id.*).  In the questionnaire, Dr. Mason indicated Williams possessed the mental ability needed to perform unskilled work at a satisfactory level.  (Tr. 1685).  Dr. Mason also opined Williams suffered from moderate limitations in maintaining social functioning and maintaining concentration, persistence and pace, and mild or no limitation in activities of daily living.  (Tr. 1687).  However, with regard to experiencing episodes of decompensation, Dr. Mason gave conflicting answers.  On one part of the form, the doctor indicated Williams had experienced one or two episodes of decompensation, but later, he stated Williams had experienced three or more episodes.  (*Id.*).  Additionally, Dr. Mason predicted Plaintiff's impairments would cause him to be absent from work roughly two days each month.  (Tr. 1688).

### III. ALJ'S RULING

The ALJ made the following relevant findings of fact and conclusions of law.  At step one of the sequential analysis,[3] the ALJ determined Williams had not engaged in substantial gainful activity since his alleged onset date of April 26, 2007.  (Tr. 10).  At step two, the ALJ held Williams suffered from two severe impairments:  major depressive disorder and degenerative joint disease.  (*Id.*).  But at step three, the ALJ ruled that neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 10-12).  Before moving to the next step, the ALJ assessed Plaintiff's residual functional capacity ("RFC") to work.  (Tr. 12-17).  The ALJ found Williams retained the ability to perform a limited range of light work as defined in 20

---

[3]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. § 404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

C.F.R. § 404.1567(b). (*Id.*).  Because Plaintiff's prior jobs required a higher RFC than that which Williams currently possessed, at step four, the ALJ ruled Williams could not return to his past relevant work as an intake specialist or gas station cashier.  (Tr. 17).  Nevertheless, the ALJ concluded there were other jobs, existing in significant numbers in the national economy, which Williams could have performed between April 26, 2007 and May 7, 2011, despite his impairments.  (Tr. 17-18).  Yet, the ALJ determined Williams became disabled on May 8, 2011, pursuant to Medical-Vocational Rule 202.06, which requires a finding of disability for claimants 55 years old or older who are restricted to light work.[4]

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*,

---

[4] Though the ALJ deemed Williams disabled as of May 8, 2011, Plaintiff did not actually turn 55 years old until May 9, 2011.  Neither party noted this distinction, the Court only notes the discrepancy for the record; the difference is not material.

745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

VI. <u>ANALYSIS</u>

Plaintiff asserted a number of objections to the ALJ's decision, none of which warrant remand or an award of benefits. Each of Plaintiff's arguments is addressed below.

A.  Medical Opinion Evidence

Plaintiff asserts the ALJ did not afford proper weight to the opinions of his treating psychiatrist, Dr. Mason. It is well-recognized that an ALJ must give special attention to the findings of a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment

8

relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2).[5] The treating source doctrine indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

Even when a treating source's opinion is not entitled to controlling weight, the ALJ must still determine how much weight to give to the opinion by applying specific factors set forth in the governing regulations. 20 C.F.R. § 404.1527(c)(1)-(6). The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinion. *Id.* An ALJ's failure to adhere to this doctrine may necessitate remand. *Wilson*, 378 F.3d at 545.

As to Dr. Mason's findings, the ALJ explained he assigned significant weight to the doctor's findings "to the extent [] they [we]re consistent with [the] objective evidence." (Tr. 16). Contrary to Plaintiff's suggestion, Dr. Mason's opinion was not entitled to controlling weight. The ALJ noted that portions of the doctor's findings were not supported by objective evidence and conflicted with the evidence of record. For example, the ALJ highlighted that Dr. Mason's suggestion that Williams would miss two days of work each month was inconsistent with Plaintiff's actual work history while working at the VAMC. Additionally, Dr. Mason's report was internally inconsistent. Dr. Mason made inconsistent observations of how many episodes of decompensation Williams had experienced. Under these circumstances, the doctor's opinion

---

[5]Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations were amended. Paragraph (d) of each section was redesignated as paragraph (c). *See* 77 F.R. 10651-01, 2011 WL 7404303.

was not entitled to controlling weight. *E.g. Jung v. Comm'r of Soc. Sec.*, No. 1:11-cv-34, 2012 WL 346663, at *14 (S.D.Ohio Feb. 2, 2012) (finding internal inconsistencies qualify as "good reasons" to discount a treating physician's opinion). Notwithstanding these shortfalls, the ALJ noted that his RFC assessment was *more* limiting than that recommended by Dr. Mason.

Despite the ALJ providing specific reasons for discounting Dr. Mason's opinion, Plaintiff contends the ALJ erroneously rejected Dr. Mason's findings in reliance on Dr. Haskins' findings. But, this contention simply is not supported by the record. The ALJ did not, explicitly or implicitly, refer to Dr. Haskins' opinion as a basis to discredit Dr. Mason's findings. Rather, as discussed above, the ALJ provided other legitimate reasons for the weight assigned to Dr. Mason's opinion.

Plaintiff also contests the ALJ's decision to assign full weight to Dr. Haskins' opinions given her misstatement of the record. In her RFC evaluation, Dr. Haskins indicated Williams had never been hospitalized for depression – a finding which both parties agree is factually incorrect. Plaintiff was hospitalized in the High Intensity Psychiatric unit of the VAMC for approximately 12 days for reasons related to his depression. However, Dr. Haskins was not aware of this hospitalization because the medical records evidencing this treatment were not in Plaintiff's Social Security file at the time Dr. Haskins completed her review. Defendant submits, and Plaintiff does not object, that these records were not submitted to the administration until nearly two years later after Plaintiff's treatment, in 2009. Thus, Dr. Haskins' misstatement was not a result of her faulty review of the record, but rather from Plaintiff's failure to timely submit this documentation.

Although Dr. Haskins was not privy to this information, the ALJ gave significant weight to her opinion because he found it was consistent with the record as a whole. This finding is

supported by the record. The ALJ noted that doctors consistently rated Plaintiff's GAF score between 55 and 65 reflecting mild to moderate symptoms. *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), at p. 34 (4th ed.). In addition, Plaintiff's ability to perform work activities while participating in the VAMC programs, supports Dr. Haskins' finding that Plaintiff was capable of performing simple, routine work. Though there may be evidence in the record which detracts from Dr. Haskins' findings, the undersigned cannot disturb the ALJ's ruling so long as there is evidence which supports the ruling. *Mullen*, 800 F.2d at 545.

### B.  Severe Impairments

At step two of the sequential evaluation process, the claimant must prove he has an impairment which significantly interferes with his ability to work. *See* 20 C.F.R. § 404.1520(c). While the claimant need not establish total disability at this stage, failure to demonstrate a severe impairment is critical because this step serves as a screening tool to allow adjudicators to dismiss groundless claims at an early stage in the evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Given the importance of this step, courts have held that an impairment should only be deemed non-severe when the ailment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with an individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). However, even when an ALJ erroneously fails to deem one of a claimant's impairments as severe, such error will not necessarily be harmful to the claimant. Remand is not required, if at the second step of the analysis, the ALJ finds the claimant to suffer from at least one severe impairment and continues to assess the claimant's severe and non-severe impairments during the

remaining steps in the evaluation process.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

 In the instant matter, Williams complains that the ALJ failed to consider all of his impairments, including his personality disorder, thoracic degeneration and pain, while evaluating his request for benefits.  To the extent Plaintiff claims these ailments should have been labeled as severe impairments at step two, his objection is overruled.  Despite the ALJ's decision to omit these impairments from his step two finding, the ALJ adequately considered each of them before rendering his ultimate decision.  The ALJ implicitly considered Plaintiff's diagnosis of borderline personality disorder when he referenced Dr. Haskins' findings indicating Williams suffered from the disorder.  Thus, pursuant to *Maziarz*, the ALJ's omission of this impairment at step two was harmless.

 On the other hand, Plaintiff cannot fault the ALJ for neglecting to label his thoracic degeneration or pain in general as severe impairments because Plaintiff did not allege disability on the basis of these ailments.  It is Plaintiff's burden to prove his entitlement to benefits.  20 C.F.R. § 404.1512(a).  During the hearing, Plaintiff's counsel advised the ALJ that Williams' main disabilities were his right knee and psychiatric impairments.  Counsel mentioned that Williams also suffered from other medical problems, but only specifically named sleep apnea and diabetes.  Plaintiff cannot now assert the ALJ erred by failing to mention these conditions.  Moreover, the ALJ indicated he reviewed all of the evidence prior to reaching a decision, and there is no requirement that an ALJ mention every piece of evidence in the record in order to demonstrate that such was considered.  *See Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005); *Roselieb v. Astrue*, No. 09-226, 2010 WL 1959446, at *2 (E.D.Ky. May 17, 2010).

C. Listings

Next, Plaintiff objects to the ALJ's determination that he did not meet Listing 12.04.  The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  A claimant will automatically be deemed disabled if his impairment(s) meet one of these listings.  In order to "meet" a listing, the claimant must satisfy all of the listing's requirements.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).

There are two ways in which a claimant may be deemed to meet Listing 12.04.  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.04.  Under the first option, the claimant must show he has a qualifying affective disorder and suffers from at least two of the following: 1) marked restrictions of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence or pace; or 4) repeated episodes of decompensation, each of extended duration (collectively referred to as the "paragraph B criteria").  *See id.*  The ALJ acknowledged Plaintiff suffered from a qualifying disorder, thus, Plaintiff only challenges the ALJ's ruling that he did meet the paragraph B criteria.

Plaintiff argues that had the ALJ fully credited the findings of Dr. Mason, the ALJ would have found he satisfied the paragraph B criteria.  But, this assertion simply is not borne out by the record.  The questionnaire completed by Dr. Mason asked the doctor to rate Plaintiff's degree of limitation in each of the areas enumerated in paragraph B.  Dr. Mason indicated Plaintiff only suffered from mild or moderate symptoms in activities of daily living, social functioning and concentration, persistence or pace.  Therefore, even considering that the doctor concluded

13

Plaintiff suffered from numerous episodes of decompensation, Plaintiff fails to meet the paragraph B criteria because it requires the claimant to suffer from at least two of the enumerated qualities.  Because Dr. Mason did not indicate Plaintiff suffered from any *marked* limitation in the other three areas, his opinion does not support a finding that Plaintiff met Listing 12.04 under the paragraph B criteria.

Neither has Plaintiff shown that he met the listing under the second option – the requirements set forth in paragraph C of the listing (the "paragraph C criteria").  Paragraph C of the listing requires the claimant to show the following:

> C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.  Repeated episodes of decompensation, each of extended duration; or
>
> . . .
>
> 3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*  But, Plaintiff has not shown that he experienced repeated episodes of decompensation or was unable to function outside of a highly supportive environment, such as would deem him disabled under the requirements of paragraph C.

The ALJ's ruling that Plaintiff had not experienced repeated episodes of decompensation is also supported by the record.  The regulations define "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. Pt. 404,

14

Subpt. P, App. 1, Listing 12.00(C)(4). While the ALJ acknowledged Plaintiff's treatment in the High Intensity Psychiatric unit of the VAMC, the ALJ ruled this period of time did not amount to an episode of decompensation. The ALJ explained that at the time of discharge, Plaintiff GAF was 65, depicting Williams only suffered mild symptoms. The ALJ further commented that although Williams continued to receive treatment at the VAMC after this discharge, psychiatrists continued to score his GAF between 55 and 65, reflecting mild to moderate symptoms. This evidence supports the ALJ's ruling, and negates Plaintiff's contention that the ALJ should have found him disabled as of the day he was admitted to the High Intensity Psychiatric unit.

Contrary to Plaintiff's suggestion, the ALJ did not render this finding in reliance upon Dr. Haskins' opinion. As noted above, Dr. Haskins' explicitly denied Plaintiff was ever hospitalized due to depression. Yet, the ALJ acknowledged this hospitalization and concluded it did not satisfy the requirement of the listing. The ALJ's conclusion was based upon his own review of the record, not Dr. Haskins' findings.

Though Dr. Mason indicated Williams experienced several episodes of decompensation, the ALJ provided adequate reason for discounting this evidence. The ALJ noted Dr. Mason gave inconsistent reports of the number of episodes Plaintiff had experienced. For example, at one point Dr. Mason indicated Williams suffered only one or two episodes in a year, but later indicated Williams suffered three or more episodes a year. In light of this inconsistency and other evidence, including Plaintiff's GAF scores showing mild to moderate symptoms, it was reasonable for the ALJ to discount Dr. Mason's opinion on this issue. As a result, substantial evidence supports the ALJ's ruling that Plaintiff did suffer repeated episodes of decompensation to satisfy the first prong of the paragraph C criteria.

15

The record also supports the ALJ's determination that Plaintiff did not meet the remaining paragraph C criteria.  Plaintiff contends he is unable to function outside of a highly supportive living arrangement, and thereby should be deemed disabled under the third prong of paragraph C of the listing.  However, the ALJ disagreed, finding there was no evidence to support Plaintiff's contention.  Notably, neither Dr. Haskins nor Dr. Mason found Williams unable to function outside of a highly supportive living arrangement.  Thus, both doctor's opinions align with the ALJ's finding.

Nevertheless, Plaintiff argues that his prior need to live in transitional housing at the VAMC, and later with his sister prove he cannot function outside of a structured environment.  While this evidence has some probative value, it is not dispositive of the issue.  Plaintiff must do more than point to evidence tending to show he meets the requirements of paragraph C.  This court must affirm the ALJ's decision so long as there is substantial evidence in the record to support the ruling, regardless of whether there is also substantial support for the opposite conclusion.  *Mullen*, 800 F.2d at 545.  Because the ALJ's decision is supported by the medical opinion evidence of record, the Court must affirm the ALJ's decision.  *See id.*

### D.  ALJ's RFC Finding

The ALJ found Plaintiff retained the RFC to perform light work.  This type of work generally involves lifting up to 20 pounds occasionally and up to 10 pounds frequently.  20 C.F.R. § 404.1567(b).  However, the ALJ precluded Plaintiff from work involving climbing ladders, ropes or scaffolds, and from work which involved any more than the occasional need to climb ramps and stairs, or to kneel, crouch or crawl.  Additionally, in light of Plaintiff's mental impairments, the ALJ noted Williams was restricted to work consisting of simple routine tasks

"involving no more than occasional interaction with co-workers and infrequent communication with the public".  (Tr. 12).

The ALJ's RFC is supported by the medical evidence of record.  The ALJ examined Williams' medical record and concluded Plaintiff's physical impairments, particularly those resulting from pain in his right leg and thigh were not well supported by the objective evidence. The ALJ noted Plaintiff received mostly conservative treatment, and that these problems did not interfere with Plaintiff's ability to walk.  The ALJ also examined the evidence regarding Plaintiff's mental impairments.  Although Plaintiff had a documented history of various mental impairments, the ALJ highlighted that Plaintiff's treating physicians consistently noted moderate symptoms at most.

Plaintiff claims the ALJ should not have considered Plaintiff's ability to perform various tasks of daily living as being indicative of Plaintiff's ability to perform light work.  Relying upon *Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir. 1990), Williams claims "an ability to do light housework does not demonstrate the ability to perform sustained remunerative employment." (Pl.'s Br. at 14).  However, Plaintiff misquoted *Prince*.  The court actually stated that "an ability to do light housecleaning does not *necessarily* indicate an ability to perform gainful employment." *Prince*, 894 F.2d at 286 (emphasis added).  Thus, while one's ability to perform various daily activities may not be controlling, an ALJ may consider this evidence when gauging the claimant's ability to work.  Accordingly, it was proper for the ALJ to consider the extent of Plaintiff's daily activities in evaluating his RFC.  *See Lewis v. Astrue*, No. 1:09-CV-52, 2010 WL 55329, at *9-10 (E.D.Tenn. Jan. 4, 2010).

Williams' remaining challenges to the ALJ's RFC assessment are also unavailing.  He maintains the ALJ's RFC fails to account for his other impairments.  Yet, Plaintiff failed to

present the Court with any evidence depicting Plaintiff required greater limitations than those announced by the ALJ.  Despite Plaintiff's claim, the ALJ did not simply ignore Plaintiff's general complaints of pain.  Instead, the ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause Williams' alleged symptoms (i.e. pain).  Nevertheless, the ALJ did not find Plaintiff's statements regarding the severity of his symptoms to be credible.  For example, concerning Plaintiff's knee pain, the ALJ noted Williams' had not underwent any surgery on his knee since May 1999, and had recently reported walking up to three miles a day.  The ALJ further noted that even after Plaintiff's recent fall in March 2008, Plaintiff was only prescribed Ibuprofen and restricted from work duties for two days.  Accordingly, Plaintiff has not shown how the ALJ's RFC fails to properly account for this pain.

Williams also claims he experienced pain from other ailments, such as degenerative arthritis and chondromalacia.  Yet, the records to which Plaintiff refers evidencing these ailments are from May of 1999, several years prior to Plaintiff's alleged disability onset date.  Williams has not shown how these dated conditions undermined the ALJ's RFC finding.

### E.  Vocational Expert Testimony

Lastly, Plaintiff attacks the ALJ's finding at step five by asserting a host of arguments. Once it is determined that a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity existing in the national economy.  *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987).  "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations and quotations omitted).  The Commissioner, in determining whether a

18

claimant can perform a significant number of jobs in the national economy, can rely on either the Medical-Vocational Guidelines or the testimony of a vocational expert as to the availability of jobs.  *See Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Where a claimant has "a nonexertional limitation that significantly limits the range of work permitted by his [or her] exertional limitations," the Commissioner may not rely solely on the Medical-Vocational Guidelines to satisfy this burden.  *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (*quoting Cole*, 820 F.2d at 771).

In the case *sub judice*, the ALJ acknowledged this standard, indicating that "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking".  (Tr. 17).  The ALJ then noted that *had* Williams retained the ability to perform the full range of light work, Medical-Vocational Rule 202.14 would direct a finding of "no disability".  But, the ALJ acknowledged Plaintiff did not retain the ability to perform the full range of light work.  Accordingly, the ALJ solicited testimony from a vocational expert in order to make his step five determination.  Because the ALJ's unfavorable decision was based, at least in part, on the vocational expert's testimony, it was not, as Plaintiff suggests, exclusively based on application of the Medical-Vocational Guidelines.  Had the ALJ relied solely on the Medical-Vocational Guidelines, there would have been no need for the ALJ to retain an expert to testify at the hearing.

Plaintiff's chief objection to the ALJ's step five finding truly centers on the ALJ's acceptance of testimony offered by vocational expert, Mr. Burkhammer (the "VE").  During the hearing, Plaintiff's counsel questioned the VE at length regarding his qualifications, his professional responsibilities and duties as a vocational expert and the basis of his findings.

19

Counsel also submitted a post-hearing memorandum to the ALJ further detailing his objections to the VE's testimony.[6]  However, despite Plaintiff's objections, the ALJ found the VE was "duly qualified" and denied Plaintiff's motion to strike the VE's testimony from the record.  The undersigned sees no reason to disturb the ALJ's ruling.

Plaintiff submits the ALJ's ruling cannot be upheld because it was based upon the VE's testimony which was neither reliable nor relevant as required by Rule 702 of the Federal Rules of Evidence.  However, as Plaintiff is aware, the Federal Rules of Evidence do not apply to administrative hearings before the Social Security Administration.  *Cline v. Sec'y of Health, Ed. & Welfare*, 444 F.2d 289, 291 (6th Cir. 1971).

Williams also challenges the ALJ's reliance upon the VE by arguing that the testimony was unreliable because it was neither based on scientific method nor the VE's personal knowledge.  Yet again, the Federal Rules of Evidence do not apply in these types of cases.  *Id.*  Nor has Plaintiff cited to any controlling authority mandating that a vocational expert's testimony meet such requirements.  In fact, with regard to Plaintiff's contention that a VE's testimony should be based upon personal knowledge, the Sixth Circuit has specifically held that there is "no requirement that [a] vocational expert have direct first-hand knowledge of someone

---

[6] Plaintiff asked the Court to consider this memorandum by incorporating the document into his brief by reference.  (Pl.'s Br. at 17).  This post-hearing document is approximately 16 pages long.  *See* (Tr. 191-207).  Local Rule 7.1(f) limits the length of memoranda in administrative cases to 20 pages.  Plaintiff's brief is already 18 pages in length.  The undersigned is not inclined to grant Plaintiff's request because it is violative of local rule.  It asks the Court to consider an additional 16 pages of argument in addition to Plaintiff's 18 page brief.  Nevertheless, because the brief is part of the record, the Court reviewed the document in its evaluation of the ALJ's ruling.  However, the Court will not respond to the issues raised in the post-hearing brief.

in the claimant's condition performing the jobs he is said to be capable of performing." *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480-81 (6th Cir. 1988).

Furthermore, Plaintiff's objections to the VE's reliance upon reference materials are undercut by the evidence to which Plaintiff cites.  Plaintiff allegedly quoted an excerpt from the Vocational Expert Handbook stating in part:

> ". . . A VE must have up-to-date knowledge of, and experience with, industrial and occupational trends and local labor market conditions; . . . and knowledge of and experience using vocational reference sources . . . . The VE should have experience in the use of reference sources in developing information about the duties, skills, physical demands and working conditions of jobs; occupationally significant characteristics of jobs; and transferability of skills."

(Pl.'s Reply at 3) (*quoting* Vocational Expert Handbook, 2d Ed. at 10 (Feb. 2003)).  While Plaintiff objects to the VE's use of reference programs such as Skilltran (Job Browser) and the Occupational Employment Quarterly, the excerpt Plaintiff referenced from the Vocational Expert Handbook, appears to encourage, and even require, VEs to familiarize themselves with and make use of these types of sources in rendering their opinions.  Consequently, the undersigned sees no basis for the Plaintiff's objection based on the evidence which he cited.

Plaintiff's reliance on a pair of cases from other circuits, *Reynolds v. Astrue*, No. 09-C-0537, 2010 WL 2900356 (E.D.Wis. July 21, 2010) and *Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) is also unavailing.  Aside from the fact that the holdings in these case are not controlling upon this Court, the facts of these cases are also distinguishable from the instant action.  One of the key distinguishing factors between these cases and the instant case is that the VEs testifying in *Reynolds* and *Overman* both provided testimony which directly conflicted with the Dictionary of Occupational Titles ("DOT").  In those cases, the claimant made the ALJ aware of the conflict, yet the ALJ chose to credit the testimony despite the contradiction.

However, no such assertion is made in this case.  Plaintiff did not present the ALJ with any evidence suggesting that the VE's testimony was contradictory to the DOT.  To the contrary, the VE testified his statements were consistent with the DOT.  (Tr. 54-55).

"It is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony."  *Sias, 861 F.2d at 480*.  The ALJ permitted counsel to cross-examine the VE regarding his qualifications and the basis of his testimony.  Although Plaintiff may disagree with the methods and/or sources used by the VE, the ALJ credited the VE's testimony.  Plaintiff has not provided the undersigned with any evidence suggesting the ALJ did not carefully weigh the VE's testimony or Plaintiff's objections to the same.  In effect, Plaintiff is asking the Court to make a *de novo* determination of the VE's credibility – a request which the Court cannot grant.  *Id*. at 481.

## VII.  DECISION

For the reasons herein stated, the undersigned recommends that the Commissioner's decision be **AFFIRMED**, as it is supported by substantial evidence.


                                        s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge


Date:  October 31, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn, 474 U.S. 140 (1985)*; *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).