# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **GEORGE WILLIAMS,** | **CASE NO. 1:11 CV 2244** |
| Plaintiff, | |
| v. | **JUDGE DONALD C. NUGENT** |
| **COMMISSIONER OF SOCIAL SECURITY,** | Magistrate Judge Kenneth S. McHargh |
| Defendant. | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation of Magistrate Judge Kenneth S. McHargh. (Docket #19.) The Magistrate Judge recommends that the Commissioner of Social Security's final determination denying Plaintiff, George Williams' application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.,* be affirmed.

### Factual and Procedural Background

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

### I. INTRODUCTION & PROCEDURAL HISTORY

On August 23, 2007, Plaintiff George Williams ("Plaintiff" or "Williams")

protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 123). Plaintiff alleged he became disabled on April 26, 2007, due to suffering from major depression. (Tr. 127). Williams' Disability Insurance benefits expired on December 31, 2011. (Tr. 123). The Social Security Administration denied Plaintiff's applications initially and on reconsideration. (Tr. 71-74). Thereafter, Williams requested a hearing to contest the denial of his applications for benefits. (Tr. 98-99). The Social Security Administration granted Plaintiff's request and scheduled a hearing before an administrative law judge.

On December 15, 2010, Administrative Law Judge Dennis LeBlanc (the "ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 24-70). Williams appeared with counsel and testified before the ALJ. (Id.). Vocational expert, Gene Burkhammer, also appeared and testified at the hearing. (Id.). On June 8, 2011, the ALJ issued a decision denying Plaintiff's applications. (Tr. 5-19). Following this ruling, Williams sought review of the ALJ's decision from the Appeals Council. (Tr. 4). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL & MEDICAL EVIDENCE

Williams, born on May 9, 1956, was 51 years old on his alleged onset date.2 (Tr. 31, 17). Accordingly, he was considered as a "person closely approaching advanced age" for Social Security purposes. See 20 C.F.R. § 404.1563(d). However, when Plaintiff turned 55 years old on May 9, 2011, he changed age categories and the Social Security Administration now considered him as a "person of advanced age". See 20 C.F.R. § 404.1563(e). Williams attained his high school diploma and has past relevant experience working as an intake specialist and gas station cashier. (Tr. 31, 53).

On April 26, 2007, Williams was admitted to the High Intensity Psychiatric unit of the Veterans Affairs Medical Center ("VAMC") after complaining of being confused and experiencing numerous thoughts. (Tr. 669). Upon admittance, doctors diagnosed Williams with "adjustment disorder with depressed and anxious mood". (Id.). Doctors also noted Plaintiff had previously experienced psychotic symptoms and schizophrenia in 1974 and 1975, although these conditions had not returned since that time. (Id.). During Plaintiff's stay in the High Intensity Psychiatric unit, he received therapy and medication to help control his depression, and doctors noted improvement in Plaintiff's mood and energy. (Tr. 669-70). On May 8, 2007, Plaintiff was discharged from the High Intensity Psychiatric unit of the VAMC to its Psychosocial Residential Rehabilitation Treatment Program (PRRTP) for "further stabilization and

education in order to help [him] transition to discharge and [] cope with stressors." (Tr. 670). At the time of discharge, Williams was diagnosed with severe, recurrent major depressive disorder without psychotic features, chest pain, and a GAF score of 65. (Tr. 669).

Williams remained in the PRRTP from May 8, 2007 until July 23, 2007. (Tr. 662). After treatment, Plaintiff reported improvement in his mood, sleep patterns and overall outlook. (Id.). Shortly after his discharge, Sybille Marqua, a psychiatrist, indicated Williams was competent and employable, and suffered no restrictions on his physical abilities. (Tr. 664). At the time of discharge, Plaintiff's GAF score was 55. (Tr. 662). After leaving the PRRTP program, Plaintiff was immediately transferred to the VAMC's domiciliary (the "Dom") for assistance with housing and vocational problems because Plaintiff was homeless. (Tr. 663, 1357). Williams continued to receive therapy and treatment while residing at the Dom. (Tr. 672-756). It appears, sometime on or around October 16, 2007, Plaintiff was transitioned out of the Dom and moved into transitional housing for veterans. (See Tr. 1252-70). While living in transitional housing Plaintiff participated in occupational therapy through the VA and retained a job. (Tr. 36-37). Williams' job tasked him with replacing light bulbs throughout different offices. (Tr. 37). Plaintiff eventually left the transitional housing program and moved in with his sister, where he resided at the time of the hearing.

On November 2, 2007, Kristin Haskins, Psy.D., a state agency reviewer, examined Plaintiff's medical record on behalf of the Social Security Administration to assess Plaintiff's mental impairments. (Tr. 1189-1205). Dr. Haskins diagnosed Williams with major depressive disorder, severe and recurrent, without psychotic features, and personality disorder, not otherwise specified. (Tr. 1192, 1196). She opined Williams suffered from a mild limitation in performing daily living activities and maintaining social functioning; a moderate limitation in maintaining concentration, persistence and pace; and that Plaintiff had not suffered from any episodes of decompensation for an extended duration. (Tr. 1199).

Dr. Haskins also assessed Plaintiff's residual functional capacity ("RFC") to work. (Tr. 1205). After reviewing the medical record, she noted Williams was currently living in the Dom due to being homeless. (Id.). The doctor also incorrectly stated that Plaintiff had never been hospitalized due to depression. (Id.). Based on her evaluation of the evidence, Dr. Haskins concluded Williams retained the RFC to perform simple, routine tasks in a static environment. (Id.).

On March 10, 2008, Plaintiff presented to the emergency room complaining of pain in his right leg after suffering a fall the previous day. (Tr.

1518-19). During examination of his knee, doctors observed old surgical scars over Plaintiff's patella, presumably from arthroscopic surgery Plaintiff underwent in 1999. (Tr. 255, 1517). Ultimately, x-rays revealed degenerative changes of Plaintiff's patellofemoral joint and chondrocalcinosis; Plaintiff was also diagnosed with a right hamstring strain. (Tr. 1517-18). Williams was advised to refrain from working for two days. (Tr. 1518). Approximately one week later, Williams returned to the emergency department complaining of right leg and thigh pain. (Tr. 1509). Doctors prescribed Williams pain medication and advised him to follow up with this primary physician at his next appointment. (Tr. 1510).

On September 3, 2009, Plaintiff's treating psychiatrist, Dr. Richard Mason, completed a Mental Impairment Questionnaire on Plaintiff's behalf. (Tr. 1683-88). Dr. Mason diagnosed Williams with depression (not otherwise specified), dependent personality traits, sleep apnea, hypertension and diabetes mellitus. (Tr. 1683). Dr. Mason also rated Plaintiff's GAF score as 60. (Id.). In the questionnaire, Dr. Mason indicated Williams possessed the mental ability needed to perform unskilled work at a satisfactory level. (Tr. 1685). Dr. Mason also opined Williams suffered from moderate limitations in maintaining social functioning and maintaining concentration, persistence and pace, and mild or no limitation in activities of daily living. (Tr. 1687). However, with regard to experiencing episodes of decompensation, Dr. Mason gave conflicting answers. On one part of the form, the doctor indicated Williams had experienced one or two episodes of decompensation, but later, he stated Williams had experienced three or more episodes. (Id.). Additionally, Dr. Mason predicted Plaintiff's impairments would cause him to be absent from work roughly two days each month. (Tr. 1688).

### III. ALJ'S RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the sequential analysis, the ALJ determined Williams had not engaged in substantial gainful activity since his alleged onset date of April 26, 2007. (Tr. 10). At step two, the ALJ held Williams suffered from two severe impairments: major depressive disorder and degenerative joint disease. (Id.). But at step three, the ALJ ruled that neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 10-12). Before moving to the next step, the ALJ assessed Plaintiff's residual functional capacity ("RFC") to work. (Tr. 12-17). The ALJ found Williams retained the ability to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). (Id.). Because Plaintiff's prior jobs required a higher RFC than that which Williams currently possessed, at step four, the ALJ ruled Williams could not return to his past relevant work as an intake specialist or gas station cashier. (Tr. 17). Nevertheless, the ALJ concluded there were other jobs, existing in significant numbers in the national economy, which

> Williams could have performed between April 26, 2007 and May 7, 2011, despite his impairments. (Tr. 17-18). Yet, the ALJ determined Williams became disabled on May 8, 2011, pursuant to Medical-Vocational Rule 202.06, which requires a finding of disability for claimants 55 years old or older who are restricted to light work.

Report and Recommendation at pp. 1-7 (footnotes omitted).

### Report and Recommendation

Plaintiff filed his Complaint with this Court on October 20, 2011, challenging the final decision of the Commissioner. (Docket #1.) On October 31, 2012, the Magistrate Judge issued his Report and Recommendation. (Docket #19.) The Magistrate Judge found the ALJ's decision to be supported by substantial evidence. On November 8, 2012, Plaintiff filed objections to the Report and Recommendation. (Docket #20.) On November 21, 2012, the Commissioner filed a Response to Plaintiff's objections, stating that the Commissioner would stand on the merits his previous Brief and asking that the Magistrate Judge's Report and Recommendation be adopted. (Docket #21.)

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding

benefits. Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ, is limited to whether the decision is supported by substantial evidence. *See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citation omitted).

### Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo* and has considered all of the pleadings, transcripts, and filings of the parties, as well as the Objections to the Report and Recommendation filed by Plaintiff. After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own.

Magistrate Judge McHargh thoroughly and exhaustively reviewed this case, and properly found the ALJ's decision to be supported by substantial evidence. Accordingly, the Report and Recommendation of Magistrate Judge McHargh (Document # 19) is hereby ADOPTED. The Commissioner's final determination denying Plaintiff's application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is hereby AFFIRMED.

This case is hereby TERMINATED.

IT IS SO ORDERED.

*Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: March 18, 2013